1  ALESHIRE & WYNDER, LLP
   G. ROSS TRINDLE, III, State Bar No. 228654
2    gtrindle@awattorneys.com
   ERIKA D. GREEN, State Bar No. 285370
3    egreen@awattorneys.com
   3880 Lemon Street, Suite 520
4  Riverside, California 92501
   Telephone: (951) 241-7338
5  Facsimile: (951) 300-0985

6  Attorneys for Defendants
   CITY OF CHINO, OFFICER
7  MATTHEW GREGORY, AND
   OFFICER MADALYN BRILEY

8

9                 **UNITED STATES DISTRICT COURT**

10      **CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION**

11

12  ELISE BROWN,                    Case No. 5:20-cv-01116-MCS (SPx)

13            Plaintiff,            **STATEMENT OF
                                    UNCONTROVERTED FACTS AND**
14       v.                         **CONCLUSIONS OF LAW IN
                                    SUPPORT OF MOTION FOR**
15  COUNTY OF SAN BERNARDINO, a     **SUMMARY JUDGMENT/PARTIAL
    municipal entity, CITY OF CHINO, a  SUMMARY JUDGMENT FILED BY**
16  municipal entity, and DOES 1-10, **DEFENDANT OFFICERS**
    Inclusive,                      **MATTHEW GREGORY AND
17                                  MADALYN BRILEY**

18            Defendants.
                                    Date: August 2, 2021
19                                  Time: 9:00 AM
                                    Ctrm: 7C
20
                                    The Honorable Mark C. Scarsi
21                                  Courtroom: 7C
                                    Magistrate Judge Sheri Pym
22                                  Courtroom: 3

23                                  Trial Date:        November 9, 2021

24

25

26

27

28



01225.0049/724752.2 EDG

Pursuant to Federal Rules of Civil Procedure Rule 56 and Local Rule 56-1, Defendants, Officer Matthew Gregory and Officer Madalyn Briley ("Defendants"), hereby submit this Statement of Uncontroverted Facts and Conclusions of Law in support of their Motion for Summary Judgment:

## UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

**I.   Defendants did not unlawfully initiate the stop of Plaintiff.**

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 1.   Plaintiff alleges that Defendants failed to conduct a reasonable investigation of the circumstances leading up to and including the initial detention of Plaintiff, which resulted in an unlawful detention/seizure/arrest. | • Third Amended Complaint ("TAC"), ¶¶ 25-28. |
| 2.   On July 7, 2019, Elise Brown ("Plaintiff") was driving a blue Oldsmobile Touring Sedan bearing license plate number 2XDJ646 when an automated license plate reader ("ALPR") detected Plaintiff's vehicle. | • Gregory Decl. ¶ 10, Ex. A (BWC Recording at 4:37)<br>• Gregory Decl. ¶ 60, Ex. B (Chino Incident Report)<br>• Briley Decl. ¶ 50, Ex. D (CPD Vehicle Report)<br>• Gramillo Decl. ¶ 5 |
| 3.   A computer aided dispatch ("CAD") system alert notified dispatch of the ALPR hit on a reported stolen vehicle identified with license plate number 2XDJ646. | • Gramillo Decl. ¶ 5 |

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 4. On-duty dispatcher, Monique Gramillo, confirmed the ALPR hit of Plaintiff's vehicle in accordance with Chino Police Department protocol by running Plaintiff's license plate number, 2XDJ646, through the California Law Enforcement Telecommunications System ("CLETS") to confirm whether the license plate pulled a match. | • Gramillo Decl. ¶¶ 6-8 |
| 5. Dispatcher, Monique Gramillo, confirmed that the license plate number came back stolen and that the originating agency that entered the report was the San Bernardino County Sheriff's Department. | • Gramillo Decl. ¶ 7 |
| 6. In accordance with the Chino Police Department's protocol for confirming ALPR hits on stolen vehicles, dispatcher Monique Gramillo also contacted the San Bernardino County Sheriff's Department who further confirmed the ALPR hit. | • Gramillo Decl. ¶¶ 8-9<br>• Gregory Decl. ¶ 60, Ex. B (Chino Incident Report) |
| 7. Once the originating agency confirmed the hit, Ms. Gramillo communicated the results to the on-air | • Gramillo Decl. ¶ 10 |



ALESHIRE &
WYNDER LLP
ATTORNEYS AT LAW

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| dispatcher who then communicated the confirmation over the radio. | |
| 8.   Defendants heard confirmation from dispatch that Plaintiff's vehicle that was picked up by the ALPR was reported stolen. | • Briley Decl. ¶ 14<br>• Gregory Decl. ¶ ¶ 13-14<br>• Gregory Decl. ¶ 60, Ex. B (Chino Incident Report) |
| 9.   Sergeant McArdle initiated a felony/high-risk stop of Plaintiff's vehicle near the entrance of the California Institution for Men, a state prison. | • Briley Decl. ¶ 18<br>• Gregory Decl. ¶ 20<br>• McArdle Decl. ¶¶ 8, 9<br>• Chapman Decl. ¶¶ 6, 7 |

**II.     Plaintiff remained lawfully detained after Plaintiff exited the reportedly stolen vehicle and provided a full circular view of her waistband area.**

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 10. Plaintiff alleges that "Defendants knew or should have known that Plaintiff did not commit any crime, was not about to commit any crime, and did not pose any threat to Defendants or others," after "Plaintiff completed a full rotation [of her body], Defendants were able to see a clear view of Plaintiff's face, body, and waistband and saw that Plaintiff was | • TAC, ¶¶ 23, 24 |

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| unarmed" such that "all actions by Defendants thereafter amount to an unreasonable and [un]lawful detention/seizure/arrest of Plaintiff." | |
| 11. A felony/high-risk stop is a stop in which a law enforcement officer may have reason to believe that the occupants of the vehicle may be armed or dangerous, which includes stops of stolen vehicles. | • Chapman Decl. ¶ 12<br>• Gregory Decl. ¶ 12 |
| 12. Defendants are trained that traffic stops involving stolen vehicles are to be treated as high-risk because of the grave danger associated with confronting a possible felony suspect, who often are armed and dangerous. | • Chapman Decl. ¶ 12<br>• Gregory Decl. ¶ 12 |
| 13. Defendants assisted with a felony/high-risk stop of Plaintiff's vehicle, initiated by Sgt. McArdle, as the vehicle was believed to have been stolen, despite a color discrepancy, as it had a complete license plate match, as confirmed by dispatch. | • Briley Decl. ¶¶ 14-17<br>• Gregory Decl. ¶¶ 14-19<br>• Gramillo Decl. ¶¶ 11-15 |

ALESHIRE &
WYNDER LLP
ATTORNEYS AT LAW

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 14. Defendants were trained that certain protocols and procedures should take place during a felony/high-risk stop to ensure safety and that such stops usually involve officers having firearms drawn at various positions of readiness, with the index finger of the dominant shooting hand along the side of the frame of the firearm in a ready position, outside of the trigger guard. | • Chapman Decl. ¶ 8<br>• Gregory Decl. ¶ 22<br>• Briley Decl. ¶ 20 |
| 15. Upon approaching the area of the felony/high-risk stop, Defendants exited their vehicles, and posted behind their vehicle doors with firearms drawn in accordance with their training and standard police practices. | • Gregory Decl. ¶ 10 Ex. A (BWC Recording at 2:05-3:57)<br>• Gregory Decl. ¶¶ 21-22<br>• Briley Decl. ¶ 12, Ex. C (BWC recording at 0:47-0:51)<br>• Briley Decl. ¶20<br>• Chapman Decl. ¶¶7- 8 |
| 16. Defendants could not see who was in the vehicle because of its dark tinted windows. | • Gregory Decl. ¶ 10, Ex. A (BWC Recording at 2:47-2:53)<br>• Gregory ¶ 23,<br>• Briley Decl. ¶ 12, Ex. C (BWC recording at 1:28-1:30)<br>• Briley Decl. ¶ 21 |
| 17.  Officer Briley's firearm was pointed in the direction of the stopped | • Briley Decl. ¶ 20 |



STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| vehicle while she waited for additional units to arrive. | |
| 18.  Officer Gregory's firearm was pointed in the direction of the stopped vehicle while he waited for additional units to arrive. | • Gregory Decl. ¶ 22 |
| 19.  Defendants were trained that it is standard police practice to have at least four police units and four officers posted at the front two vehicles when conducting a felony/high-risk stop, if possible. | • Gregory Decl. ¶ 24<br>• Briley Decl. ¶ 22 |
| 20. Once the appropriate number of units were on scene, Officer Briley repositioned next to Officer Gregory to access the PA system and to begin issuing her commands to the driver. | • Gregory Decl. ¶ 10, Ex. A (BWC Recording at 4:00)<br>• Gregory Decl. ¶ 29<br>• Briley Decl. ¶ 12, Ex. C (BWC recording at 3:08)<br>• Briley Decl. ¶¶ 25-27 |
| 21. Up to this point, neither Defendant had issued any commands to the occupants of the vehicle and no occupants had yet exited the vehicle. | • Briley Decl. ¶ 25<br>• Gregory Decl. ¶ 31 |

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 22. After repositioning next to Officer Gregory, Officer Briley drew her firearm again and pointed it in the direction of the stopped vehicle, keeping her finger on the frame of the weapon, outside of the trigger guard. | • Briley Decl. ¶12, Ex. C (BWC recording at 2:36-2:38)<br>• Briley Decl. ¶ 26<br>• Gregory Decl. ¶ 30 |
| 23. After Officer Briley repositioned next to Officer Gregory, Officer Gregory lowered his firearm into a low-ready position, generally pointed towards the stopped vehicle, but in more of a downward position. | • Gregory Decl. ¶ 10, Ex. A (BWC recording at 3:57)<br>• Gregory Decl. ¶ 27 |
| 24. Defendants were trained that their first priority in a felony/high-risk stop is to render the vehicle safe, by clearing it of occupants, taking those occupants into custody, and then clearing the vehicle of any additional/hiding occupants, and any possible weapons or tools. | • Briley Decl. ¶ 24<br>• Gregory Decl. ¶ 28 |



| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 25. Per her training, Officer Briley instructed Plaintiff: to turn off the vehicle; to throw the keys outside of the window; to stick both hands outside of the window; to open the car door from the outside of the vehicle with her left hand; and to step outside of the vehicle facing away with her hands up. | • Briley Decl. ¶ 27-28<br>• Briley Decl. ¶ 12, Ex. C (BWC recording at 3:08-3:45)<br>• McCardle Decl. ¶ 7, Ex. F (BWC recording 4:53-7:43)<br>• McCardle Decl. ¶ 13<br>• Gregory Decl. ¶ 10, Ex. A (BWC recording 4:32-5:19<br>• Gregory Decl. ¶¶ 32, 33 |
| 26. As Plaintiff exited the vehicle, Officer Briley instructed Plaintiff: to take two steps to her left; to lift the collar of her shirt with her right hand to reveal her waistband; and to turn around in a circle to reveal her entire waistband area. | • Gregory Decl. ¶ 10, Ex. A (BWC Recording at 5:59-6:10)<br>• Gregory Decl.¶ ¶ 37-38<br>• Briley Decl. ¶ ¶33-34<br>• Briley Decl. ¶ 12, Ex. C (BWC recording at 4:01-4:45)<br>• McCardle Decl. ¶ 7, Ex. F (BWC recording 4:53-7:43)<br>• McCardle Decl. ¶ 13 |
| 27. Even though Plaintiff had been compliant with Officer Briley's commands up to this point, Chino Police Department training emphasized that the driver still represented a potential threat until taken into custody, and the vehicle represented a potential | • Briley Decl. ¶ 29<br>• Gregory Decl. ¶ 35 |



ALESHIRE & WYNDER LLP
ATTORNEYS AT LAW

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| threat until cleared, all of which Defendants were aware. | |
| 28. After Plaintiff completed the rotation to reveal her waistband, Officer Briley instructed Plaintiff to walk back towards the sound of her voice. | • Briley Decl. ¶ 12, Ex. C (BWC recording at 4:49-5:09)<br>• Briley Decl. ¶35<br>• Gregory Decl. ¶ 10, Ex. A (BWC Recording at 6:11-6:31)<br>• Gregory Decl. ¶ 40<br>• McCardle Decl. ¶ 7, Ex. F (BWC recording 4:53-7:43)<br>• McCardle Decl. ¶ 13 |
| 29. Plaintiff complied with Officer Briley's commands and did not appear to either officer to have any mobility or comprehension issues. | • Gregory Decl. ¶ 10, Ex. A (BWC Recording at 4:00-6:31)<br>• Gregory Decl. ¶ 39<br>• Briley Decl. ¶ 40<br>• McCardle Decl. ¶ 7, Ex. F (BWC recording 4:53-7:43)<br>• McCardle Decl. ¶ 13<br>• Chapman Decl. ¶ 10 |
| 30. After Plaintiff exited the stopped vehicle, both Defendants believed that Plaintiff was in her mid- to late-50s. | • Briley Decl. ¶ 30<br>• Gregory Decl. ¶ 34 |

ALESHIRE &
WYNDER LLP
ATTORNEYS AT LAW

A&W

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 31. Once the driver exited the vehicle and turned around, per her training for felony/high-risk traffic stops, Officer Briley adjusted her firearm to point at Plaintiff, keeping her finger on the frame of the firearm, outside of the trigger guard. | • Briley Decl. ¶ 12, Ex. C (BWC recording at 3:38-3:45) <br> • Briley Decl. ¶ 31 <br> • Gregory Decl. ¶ 36 |
| 32. As Plaintiff began to approach, Officer Briley holstered her weapon, got her handcuffs ready, and Officer Gregory took over the commands. | • Briley Decl. ¶¶ 36-37 <br> • Briley Decl. ¶ 12, Ex. C (BWC recording at 5:09-5:36) <br> • Gregory Decl. ¶ 10, Ex. A (BWC Recording at 6:29-7:00) <br> • Gregory Decl. ¶¶ 41-42, 44 <br> • McCardle Decl. ¶ 7, Ex. F (BWC recording 4:53-7:43) <br> • McCardle Decl. ¶ 13 |
| 33. Once Officer Gregory took over the commands, and per his training, he instructed Plaintiff to get onto her knees while Officer Briley handcuffed her. | • Briley Decl. ¶ 12, Ex. C (BWC recording at 5:27-5:36) <br> • Briley Decl. ¶¶37-38 <br> • Gregory Decl. ¶ 10, Ex. A (BWC Recording at 6:24-7:16) <br> • Gregory Decl. ¶¶ 42-45 |

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 34. While Officer Gregory approached Plaintiff, he did not point his firearm at her. | • Gregory Decl. ¶ 10, Ex. A (BWC Recording at 7:06-7:13)<br>• Briley Decl. ¶ 12, Ex. C (BWC recording at 5:37-5:52) |
| 35. Defendants did not hold Plaintiff at gunpoint while she was handcuffed. | • Gregory Decl. ¶ 10, Ex. A (BWC Recording at 7:06-7:13)<br>• Briley Decl. ¶ 12, Ex. C (BWC recording at 5:37-5:52) |
| 36. While she placed Plaintiff in handcuffs, Officer Briley estimated that Plaintiff was maybe in her 60s but not older than that. | • Briley Decl. ¶ 39 |
| 37. After Plaintiff was handcuffed, she was taken back by the police vehicles but was not placed into the back of a police vehicle. | • Gregory Decl. ¶ 10, Ex. A (BWC Recording at 7:30-7:51)<br>• Gregory Decl. ¶¶ 51-52<br>• Briley Decl. ¶ 45 |
| 38. As Officer Briley's Field Training Officer, Officer Gregory found her actions at all times consistent with Chino Police Department practices and protocols for execution of a felony/high-risk stop and did not find any deficiencies in her performance at any time. | • Gregory Decl. ¶ 57 |
| 39. Following the incident, Officer Gregory did not receive any criticism | • Gregory Decl. ¶ 59 |

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| from supervisors or anyone else in the field at the time that Officer Briley's performance of her duties as a trainee was inconsistent in any way with Chino Police Department training. | |
| 40. Following the incident, Officer Gregory did not receive any criticism from supervisors present in the field at the time that his performance of his duties as an officer or as a Field Training Officer were inconsistent in any way with Chino Police Department training. | • Gregory Decl. ¶ 58 |
| 41. In his capacity as supervisor for the Chino Police Department Field Training Officer Program, Sgt. McArdle concluded that every command and action he witnessed taken by Officer Briley conformed to Chino Police Department training standards and protocols for felony/high-risk stops. | • McArdle Decl. ¶ 16 |
| 42. At no time after the incident did Sgt. McArdle formulate or provide any criticism of Officer Briley regarding her performance as a Police Officer in | • McArdle Decl. ¶ 17 |



ALESHIRE &
WYNDER LLP
ATTORNEYS AT LAW

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| training, with respect to her actions taken during the incident. | |
| 43. In his capacity as supervisor for the Chino Police Department Field Training Officer Program, Sgt. McArdle concluded that every command and action he witnessed taken by Officer Gregory conformed to Chino Police Department training standards and protocols for felony/high-risk stops. | • McArdle Decl. ¶ 15 |
| 44. At no time after the incident did Sgt. McArdle formulate or provide any criticism of Officer Gregory regarding his performance as a Police Officer, or as a Field Training Officer, with respect to his actions taken during the incident. | • McArdle Decl. ¶ 15 |
| 45. The tactics employed by Defendants with regard to a high-risk felony stop on a reported stolen vehicle were in accordance with Chino Police Department policies, California POST training guidelines, contemporary best practices for professional police agencies, competently trained police officers similarly situated, and national standards of care. | • Chapman Decl. ¶ 11-13 |

ALESHIRE &
WYNDER LLP
ATTORNEYS AT LAW

A&W

**III.** **Officer Gregory did not unlawfully detain or use excessive force against Plaintiff by drawing his firearm and keeping it in a low-ready position while Plaintiff was outside of her vehicle and not yet in handcuffs.**

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 46. Plaintiff alleges that Defendants held her at gunpoint during the entirety of the incident, which was unreasonable and constituted excessive force. | • TAC ¶¶ 27, 41, 44 |
| 47. While Officer Briley was giving commands, Officer Gregory's firearm was drawn in a low-ready position, not pointed at Plaintiff. | • Gregory Decl. ¶ 10, Ex. A (BWC Recording at 3:57-7:00)<br>• Gregory Decl. ¶¶ 27 |
| 48. While Officer Gregory approached Plaintiff, he did not point his firearm at Plaintiff. | • Gregory Decl. ¶ 10, Ex. A (BWC Recording at 7:06-7:13)<br>• Briley Decl. ¶ 12, Ex. C (BWC recording at 5:37-5:52) |
| 49. Defendants did not hold Plaintiff at gunpoint while she was handcuffed. | • Gregory Decl. ¶ 10, Ex. A (BWC Recording at 7:06-7:13<br>• Briley Decl. ¶ 12, Ex. C (BWC recording at 5:37-5:52) |
| 50. At no point during the encounter did Officer Gregory point his firearm at Plaintiff. | • Gregory Decl. ¶ 10, Ex. A (BWC Recording at 3:57-7:00)<br>• Gregory Decl. ¶ 27 |

**IV.    Officer Briley did not act unlawfully by pointing her firearm at Plaintiff, while Plaintiff was outside of her vehicle, facing away from Defendants, and not yet in handcuffs.**

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 51. Plaintiff alleges that Defendants held her at gunpoint during the entirety of the incident, which was unreasonable. | • TAC ¶ 27 |
| 52. Upon approaching the area of the felony/high-risk stop, Defendants exited their vehicles, and posted behind their vehicle doors with firearms drawn in accordance with their training and standard police practices. | • Gregory Decl. ¶ 10 Ex. A (BWC Recording at 2:05-3:57)<br>• Gregory Decl. ¶¶ 21-22<br>• Briley Decl. ¶ 12, Ex. C (BWC recording at 0:47-0:51);<br>• Briley Decl. ¶ 20<br>• Chapman Decl. ¶¶7- 8 |
| 53. Officer Briley's firearm was pointed in the direction of the stopped vehicle while she waited for additional units to arrive. | • Briley Decl. ¶ 20 |
| 54. After repositioning next to Officer Gregory, Officer Briley drew her firearm again and pointed it in the direction of the stopped vehicle, keeping her finger on the frame of the weapon, outside of the trigger guard. | • Briley Decl. ¶12, Ex. C (BWC recording at 2:36-2:38)<br>• Briley Decl. ¶ 26<br>• Gregory Decl. ¶ 30 |
| 55. Defendants were trained that their first priority in a felony/high-risk | • Briley Decl. ¶ 24<br>• Gregory Decl. ¶ 28 |

ALESHIRE &
WYNDER LLP
ATTORNEYS AT LAW

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| stop is to render the vehicle safe, by clearing it of occupants, taking those occupants into custody, and then clearing the vehicle of any additional/hiding occupants, and any possible weapons or tools. | |
| 56. Even though Plaintiff had been compliant with Officer Briley's commands up to this point, Chino Police Department training emphasized that the driver still represented a potential threat until taken into custody, and the vehicle represented a potential threat until cleared, all of which Defendants were aware. | • Briley Decl. ¶ 29<br>• Gregory Decl. ¶ 35 |
| 57. After Plaintiff exited the stopped vehicle, both Defendants believed that Plaintiff was in her mid- to late-50s. | • Briley Decl. ¶ 30<br>• Gregory Decl. ¶ 34 |
| 58. Once the driver exited the vehicle, per her training for felony/high-risk traffic stops, Officer Briley adjusted her firearm to point at Plaintiff, keeping her finger on the frame of the firearm, outside of the trigger guard. | • Briley Decl. ¶ 12, Ex. C (BWC recording at 3:38-3:45)<br>• Briley Decl. ¶ 31<br>• Gregory Decl. ¶ 36 |


ALESHIRE & WYNDER LLP
ATTORNEYS AT LAW

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 59. As Plaintiff began to approach, Officer Briley holstered her weapon, got her handcuffs ready, and Officer Gregory took over the commands. | • Briley Decl. ¶¶ 36-37<br>• Briley Decl. ¶ 12, Ex. C (BWC recording at 5:09-5:36)<br>• Gregory Decl. ¶ 10, Ex. A (BWC Recording at 6:29-7:00)<br>• Gregory Decl. ¶¶ 41-42, 44<br>• McCardle Decl. ¶ 7, Ex. F (BWC recording 4:53-7:43)<br>• McCardle Decl. ¶ 13 |
| 60. Defendants did not hold Plaintiff at gunpoint while she was handcuffed. | • Gregory Decl. ¶ 10, Ex. A (BWC Recording at 7:06-7:13<br>• Briley Decl. ¶ 12, Ex. C (BWC recording at 5:37-5:52) |
| 61. As Officer Briley's Field Training Officer, Officer Gregory found her actions at all times consistent with Chino Police Department practices and protocols for execution of a felony/high-risk stop and did not find any deficiencies in her performance at any time. | • Gregory Decl. ¶ 57 |
| 62. Following the incident, Officer Gregory did not receive any criticism from supervisors or anyone else in the field at the time that Officer Briley's | • Gregory Decl. ¶ 59 |

ALESHIRE &
WYNDER LLP
ATTORNEYS AT LAW

A W

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| performance of her duties as a trainee was inconsistent in any way with Chino Police Department training. | |
| 63. In his capacity as supervisor for the Chino Police Department Field Training Officer Program, Sgt. McArdle concluded that every command and action he witnessed taken by Officer Briley conformed to Chino Police Department training standards and protocols for felony/high-risk stops. | • McArdle Decl. ¶ 16 |
| 64. The tactics employed by Defendants with regard to a high-risk felony stop on a reported stolen vehicle were in accordance with Chino Police Department policies, California POST training guidelines, contemporary best practices for professional police agencies, competently trained police officers similarly situated, and national standards of care. | • Chapman Decl. ¶ 11-13 |

**V.   The actions of Defendants in having Plaintiff kneel, consistent with their training, for less than twenty seconds, was not unreasonable under the totality of the circumstances.**

ALESHIRE & WYNDER LLP
ATTORNEYS AT LAW

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 65. Defendants were trained that their first priority in a felony/high-risk stop is to render the vehicle safe, by clearing it of occupants, taking those occupants into custody, and then clearing the vehicle of any additional/hiding occupants, and any possible weapons or tools. | • Briley Decl. ¶ 24<br>• Gregory Decl. ¶ 28 |
| 66. Even though Plaintiff had been compliant with Officer Briley's commands, Chino Police Department training emphasized that the driver still represented a potential threat until taken into custody, and the vehicle represented a potential threat until cleared, all of which Defendants were aware. | • Briley Decl. ¶ 29<br>• Gregory Decl. ¶ 35 |
| 67. After Plaintiff completed the rotation to reveal her waistband, Officer Briley instructed Plaintiff to walk back towards the sound of her voice. | • Briley Decl. ¶ 12, Ex. C (BWC recording at 4:49-5:09)<br>• Briley Decl. ¶35<br>• Gregory Decl. ¶ 10, Ex. A (BWC Recording at 6:11-6:31)<br>• Gregory Decl. ¶ 40<br>• McCardle Decl. ¶ 7, Ex. F (BWC recording 4:53-7:43)<br>• McCardle Decl. ¶ 13 |





| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 68. Plaintiff complied with Officer Briley's commands and did not appear to either officer to have any mobility or comprehension issues. | • Gregory Decl. ¶ 10, Ex. A (BWC Recording at 4:00-6:31)<br>• Gregory Decl. ¶ 39<br>• Briley Decl. ¶ 40<br>• McCardle Decl. ¶ 7, Ex. F (BWC recording 4:53-7:43)<br>• McCardle Decl. ¶ 13<br>• Chapman Decl. ¶ 10 |
| 69. After Plaintiff exited the stopped vehicle, both Defendants believed that Plaintiff was in her mid- to late-50s. | • Briley Decl. ¶ 30<br>• Gregory Decl. ¶ 34 |
| 70. Once Officer Gregory took over the commands, and per his training, he instructed Plaintiff to get onto her knees while Officer Briley handcuffed her. | • Briley Decl. ¶ 12, Ex. C (BWC recording at 5:27-5:36)<br>• Briley Decl. ¶¶37-38<br>• Gregory Decl. ¶ 10, Ex. A (BWC Recording at 6:24-7:16)<br>• Gregory Decl. ¶¶ 42-45 |
| 71. Officer Gregory estimated that Plaintiff was on her knees for approximately eighteen seconds. | • Gregory Decl. ¶ 10, Ex. A (BWC Recording at 6:58-7:16)<br>• Gregory Decl. ¶ 48<br>• Chapman Decl. ¶ 16 |
| 72. Officer Briley estimated that Plaintiff was on her knees for approximately nineteen seconds. | • Briley Decl. ¶ 12, Ex. C (BWC recording at 5:33-5:52)<br>• Briley Decl. ¶ 42 |

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 73. As Officer Briley's Field Training Officer, Officer Gregory found her actions at all times consistent with Chino Police Department practices and protocols for execution of a felony/high-risk stop and did not find any deficiencies in her performance at any time. | • Gregory Decl. ¶ 57 |
| 74. Following the incident, Officer Gregory did not receive any criticism from supervisors or anyone else in the field at the time that Officer Briley's performance of her duties as a trainee was inconsistent in any way with Chino Police Department training. | • Gregory Decl. ¶ 59 |
| 75. Following the incident, Officer Gregory did not receive any criticism from supervisors present in the field at the time that his performance of his duties as an officer or as a Field Training Officer were inconsistent in any way with Chino Police Department training. | • Gregory Decl. ¶ 58 |
| 76. In his capacity as supervisor for the Chino Police Department Field Training Officer Program, Sgt. | • McArdle Decl. ¶ 16 |

-22-

ALESHIRE & WYNDER LLP
ATTORNEYS AT LAW

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| McArdle concluded that every command and action he witnessed taken by Officer Briley conformed to Chino Police Department training standards and protocols for felony/high-risk stops. | |
| 77. At no time after the incident did Sgt. McArdle formulate or provide any criticism of Officer Briley regarding her performance as a Police Officer in training, with respect to her actions taken during the incident. | • McArdle Decl. ¶ 17 |
| 78. In his capacity as supervisor for the Chino Police Department Field Training Officer Program, Sgt. McArdle concluded that every command and action he witnessed taken by Officer Gregory conformed to Chino Police Department training standards and protocols for felony/high-risk stops. | • McArdle Decl. ¶ 15 |
| 79. At no time after the incident did Sgt. McArdle formulate or provide any criticism of Officer Gregory regarding his performance as a Police Officer, or as a Field Training Officer, with respect to his actions taken during the incident. | • McArdle Decl. ¶ 15 |



| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 80. The tactics employed by Defendants with regard to a high-risk felony stop on a reported stolen vehicle were in accordance with Chino Police Department policies, California POST training guidelines, contemporary best practices for professional police agencies, competently trained police officers similarly situated, and national standards of care. | • Chapman Decl. ¶ 11-13 |

**VI.    Plaintiff's detention in handcuffs for approximately three minutes, which was not controlled by Defendants, was not unreasonable under the totality of the circumstances.**

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 81. Plaintiff alleges that Defendants detained her in handcuffs for an unreasonable amount of time. | • TAC ¶ 56 |
| 82. Once Officer Gregory took over the commands, and per his training, he instructed Plaintiff to get onto her knees while Officer Briley handcuffed her. | • Briley Decl. ¶ 12, Ex. C (BWC recording at 5:27-5:36)<br>• Briley Decl. ¶¶37-38<br>• Gregory Decl. ¶ 10, Ex. A (BWC Recording at 6:24-7:16)<br>• Gregory Decl. ¶¶ 42-45 |

ALESHIRE & WYNDER LLP
ATTORNEYS AT LAW

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 83. Plaintiff was in Officer Briley's custody, in handcuffs, for approximately thirty-eight seconds from the time that the first handcuff is placed on her left wrist, to the time that Officer Briley released Plaintiff into the custody of Officer Barber. | • Briley Decl. ¶ 12, Ex. C (BWC recording at 5:45-6:23)<br>• Briley Decl. ¶ 43 |
| 84. As captured by Officer Briley's body worn camera, Plaintiff was in handcuffs for approximately two minutes, twenty-nine seconds. | • Briley Decl. ¶ 12, Ex. C (BWC recording at 5:45-8:14)<br>• Briley Decl. ¶¶ 46-48 |
| 85. As captured by Officer Gregory's body worn camera, Plaintiff was in handcuffs for approximately two minutes, thirty-five seconds. | • Gregory Decl. ¶ 10, Ex. A (BWC Recording at 7:02-9:37)<br>• Gregory Decl. ¶ 54 |
| 86. Officer Barber actually released Plaintiff from handcuffs. | • Barber Decl. ¶ 11 |
| 87. Officer Barber estimated that Plaintiff's total time in handcuffs was approximately three minutes. | • Barber Decl. ¶ 12 |
| 88. The tactics employed by Defendants with regard to a high-risk felony stop on a reported stolen vehicle were in accordance with Chino Police Department policies, California POST training guidelines, contemporary best | • Chapman Decl. ¶ 11-13, 16 |



ALESHIRE &
WYNDER LLP
ATTORNEYS AT LAW

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| practices for professional police agencies, competently trained police officers similarly situated, and national standards of care. | |

**VII.   Defendants did not use excessive force because their actions were objectively reasonable under the totality of the circumstances known to them at the time.**



| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 89. Plaintiff alleges that Defendants used excessive force against her by detaining her at gunpoint. | • TAC ¶¶ 41, 44 |
| 90. A felony/high-risk stop is a stop in which a law enforcement officer may have reason to believe that the occupants of the vehicle may be armed or dangerous, and includes stops of stolen vehicles. | • Chapman Decl. ¶ 12<br>• Gregory Decl. ¶ 12 |
| 91. Defendants are trained that traffic stops involving stolen vehicles are to be treated as high-risk because of the grave danger associated with confronting a possible felony suspect, who often are armed and dangerous. | • Chapman Decl. ¶ 12<br>• Gregory Decl. ¶ 12 |

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 92. Defendants were trained that certain protocols and procedures should take place during a felony/high-risk stop to ensure safety and that such stops usually involve officers having firearms drawn at various positions of readiness, with the index finger of the dominant shooting hand along the side of the frame of the firearm in a ready position, outside of the trigger guard. | • Chapman Decl. ¶ 8 <br> • Gregory Decl. ¶ 22 <br> • Briley Decl. ¶ 20 |
| 93. Defendants were trained that their first priority in a felony/high-risk stop is to render the vehicle safe, by clearing it of occupants, taking those occupants into custody, and then clearing the vehicle of any additional/hiding occupants, and any possible weapons or tools. | • Briley Decl. ¶ 24 <br> • Gregory Decl. ¶ 28 |
| 94. Defendants could not see who was in the vehicle because of its dark tinted windows. | • Gregory Decl. ¶ 10, Ex. A (BWC Recording at 2:47-2:53) <br> • Gregory ¶ 23, <br> • Briley Decl. ¶ 12, Ex. C (BWC recording at 1:28-1:30) <br> • Briley Decl. ¶ 21 |
| 95.  Officer Briley's firearm was pointed in the direction of the stopped | • Briley Decl. ¶ 20 |




| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| vehicle while she waited for additional units to arrive. | |
| 96.  Officer Gregory's firearm was pointed in the direction of the stopped vehicle while he waited for additional units to arrive. | • Gregory Decl. ¶ 22 |
| 97. Once the appropriate number of units were on scene, Officer Briley repositioned next to Officer Gregory to access the PA system and to begin issuing her commands to the driver. | • Gregory Decl. ¶ 10, Ex. A (BWC Recording at 4:00)<br>• Gregory Decl. ¶ 29<br>• Briley Decl. ¶ 12, Ex. C (BWC recording at 3:08)<br>• Briley Decl. ¶¶ 25-27 |
| 98. Up to this point, neither Defendant had issued any commands to the occupants of the vehicle and no occupants had yet exited the vehicle. | • Briley Decl. ¶ 25<br>• Gregory Decl. ¶ 31 |
| 99. After repositioning next to Officer Gregory, Officer Briley drew her firearm again and pointed it in the direction of the stopped vehicle, keeping her finger on the frame of the weapon, outside of the trigger guard. | • Briley Decl. ¶12, Ex. C (BWC recording at 2:36-2:38)<br>• Briley Decl. ¶ 26<br>• Gregory Decl. ¶ 30 |
| 100.      After Officer Briley repositioned next to Officer Gregory, Officer Gregory lowered his firearm into a low-ready position, generally | • Gregory Decl. ¶ 10, Ex. A (BWC recording at 3:57)<br>• Gregory Decl. ¶ 27 |

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

ALESHIRE &
WYNDER LLP
ATTORNEYS AT LAW

A W

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| pointed towards the stopped vehicle, but in more of a downward position. | |
| 101.    Once the driver exited the vehicle and turned around, per her training for felony/high-risk traffic stops, Officer Briley adjusted her firearm to point at Plaintiff, keeping her finger on the frame of the firearm, outside of the trigger guard. | • Briley Decl. ¶ 12, Ex. C (BWC recording at 3:38-3:45) • Briley Decl. ¶ 31 • Gregory Decl. ¶ 36 |
| 102.    Plaintiff complied with Officer Briley's commands and did not appear to have any mobility or comprehension issues. | • Gregory Decl. ¶ 10, Ex. A (BWC Recording at 4:00-6:31) • Gregory Decl. ¶ 39 • Briley Decl. ¶ 40 |
| 103.    After Plaintiff exited the stopped vehicle, both Defendants believed that Plaintiff was in her mid- to late-50s. | • Briley Decl. ¶ 30 • Gregory Decl. ¶ 34 |
| 104.    While Officer Briley was giving commands, Officer Gregory's gun was drawn in a low-ready position, never directly pointed at Plaintiff. At no point during the remainder of the stop was Officer Gregory's gun pointed at Plaintiff. | • Gregory Decl. ¶ 10, Ex. A (BWC Recording at 3:57-7:00) • Gregory Decl. ¶¶ 27 |





| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 105.     As Plaintiff began to approach, Officer Briley holstered her weapon, got her handcuffs ready, and Officer Gregory took over the commands. | • Briley Decl. ¶¶ 36-37<br>• Briley Decl. ¶ 12, Ex. C (BWC recording at 5:09-5:36)<br>• Gregory Decl. ¶ 10, Ex. A (BWC Recording at 6:29-7:00)<br>• Gregory Decl. ¶¶ 41-42, 44<br>• McCardle Decl. ¶ 7, Ex. F (BWC recording 4:53-7:43)<br>• McCardle Decl. ¶ 13 |
| 106.     Once Officer Gregory took over the commands, and per his training, he instructed Plaintiff to get onto her knees while Officer Briley handcuffed her. | • Briley Decl. ¶ 12, Ex. C (BWC recording at 5:27-5:36)<br>• Briley Decl. ¶¶37-38<br>• Gregory Decl. ¶ 10, Ex. A (BWC Recording at 6:24-7:16)<br>• Gregory Decl. ¶¶ 42-45 |
| 107.     While Officer Gregory approached Plaintiff, he did not point his firearm at her. | • Gregory Decl. ¶ 10, Ex. A (BWC Recording at 7:06-7:13)<br>• Briley Decl. ¶ 12, Ex. C (BWC recording at 5:37-5:52) |
| 108.     Defendants did not hold Plaintiff at gunpoint while she was handcuffed. | • Gregory Decl. ¶ 10, Ex. A (BWC Recording at 7:06-7:13)<br>• Briley Decl. ¶ 12, Ex. C (BWC recording at 5:37-5:52) |
| 109.     As Officer Briley's Field Training Officer, Officer Gregory found her actions at all times consistent with | • Gregory Decl. ¶ 57 |

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| Chino Police Department practices and protocols for execution of a felony/high-risk stop and did not find any deficiencies in her performance at any time. | |
| 110.     Following the incident, Officer Gregory did not receive any criticism from supervisors or anyone else in the field at the time that Officer Briley's performance of her duties as a trainee was inconsistent in any way with Chino Police Department training. | • Gregory Decl. ¶ 59 |
| 111.     Following the incident, Officer Gregory did not receive any criticism from supervisors present in the field at the time that his performance of his duties as an officer or as a Field Training Officer were inconsistent in any way with Chino Police Department training. | • Gregory Decl. ¶ 58 |
| 112.     In his capacity as supervisor for the Chino Police Department Field Training Officer Program, Sgt. McArdle concluded that every command and action he witnessed taken by Officer Briley conformed to Chino Police Department | • McArdle Decl. ¶ 16 |



| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| training standards and protocols for felony/high-risk stops. | |
| 113.   At no time after the incident did Sgt. McArdle formulate or provide any criticism of Officer Briley regarding her performance as a Police Officer in training, with respect to her actions taken during the incident. | • McArdle Decl. ¶ 17 |
| 114.   In his capacity as supervisor for the Chino Police Department Field Training Officer Program, Sgt. McArdle concluded that every command and action he witnessed taken by Officer Gregory conformed to Chino Police Department training standards and protocols for felony/high-risk stops. | • McArdle Decl. ¶ 15 |
| 115.   At no time after the incident did Sgt. McArdle formulate or provide any criticism of Officer Gregory regarding his performance as a Police Officer, or as a Field Training Officer, with respect to his actions taken during the incident. | • McArdle Decl. ¶ 15 |
| 116.   The tactics employed by Defendants with regard to a high-risk felony stop on a reported stolen vehicle | • Chapman Decl. ¶ 11-13 |



STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| were in accordance with Chino Police Department policies, California POST training guidelines, contemporary best practices for professional police agencies, competently trained police officers similarly situated, and national standards of care. | |
| 117.  Plaintiff's total length of time in custody of no more than 13 minutes, was not unreasonable under the circumstances. | • Chapman Decl. ¶ 16<br>• Gregory Decl. ¶ 10, Ex. A (BWC Recording at 2:13-10:10) |

## VIII. Defendants are entitled to Qualified Immunity.

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 118.  Officer Briley was employed with the City of Chino as a Police Officer and on duty at the time of the incident. | • Briley Decl. ¶¶ 2, 8 |
| 119.  Officer Gregory was employed with the City of Chino as a Police Officer and on duty at the time of the incident. | • Gregory Decl. ¶¶ 2, 6-7 |
| 120.  Defendants did not initiate the stop of Plaintiff's reportedly stolen vehicle. | • Briley Decl. ¶ 18<br>• Gregory Decl. ¶ 20<br>• McArdle Decl. ¶¶ 8, 9<br>• Chapman Decl. ¶¶ 6, 7 |

ALESHIRE & WYNDER LLP
ATTORNEYS AT LAW

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 121.    Although mistaken, Defendants reasonably believed that Plaintiff's vehicle was stolen, as dispatch provided confirmation of the same. | • Briley Decl. ¶ 13<br>• Gregory Decl. ¶¶ 13-15<br>• Gregory Decl. ¶ 60, Ex. B (Chino Incident Report)<br>• Gramillo Decl. ¶¶ 6-10 |
| 122.    Defendants' actions were consistent with standard police training and protocols for high-risk/felony stops. | • Chapman Decl. ¶¶ 11-23 |
| 123.    Defendants' actions were consistent with Chino Police Department training. | • Briley Decl. ¶ 53-54<br>• Gregory Decl. ¶¶ 57-59<br>• McArdle Decl. ¶¶ 15-17 |

DATED:  July 2, 2021            ALESHIRE & WYNDER, LLP
                                G. ROSS TRINDLE, III
                                ERIKA D. GREEN


                         By: _____/s/ Erika D. Green_____
                                ERIKA D. GREEN
                                Attorneys for Defendants CITY OF
                                CHINO, OFFICER MATTHEW
                                GREGORY, AND OFFICER MADALYN
                                BRILEY

# PROOF OF SERVICE

**Elise Brown v. County of San Bernardino, City of Chino, et al.**
**Case No. 5:20-cv-01116-MCS (SPx)**

**STATE OF CALIFORNIA, COUNTY OF RIVERSIDE**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Riverside, State of California. My business address is 3880 Lemon Street, Suite 520, Riverside, CA 92501.

On July 2, 2021, I served true copies of the following document(s) described as **STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANT OFFICERS MATTHEW GREGORY AND MADALYN BRILEY** on the interested parties in this action as follows:

## SEE ATTACHED SERVICE LIST

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on July 2, 2021, at Riverside, California.

/s/ Sandra D. McLeod
Sandra D. McLeod

**SERVICE LIST**
**Elise Brown v. County of San Bernardino, City of Chino, et al.**
**Case No. 5:20-cv-01116-MCS (SPx)**

Rodney S. Diggs, Esq.                              Attorneys for Plaintiff
Antonio K. Kizzie, Esq.                           Elise Brown
Yalda Paydar, Esq.
IVIE MCNEILL WYATT PURCELL &
DIGGS
A Professional Law Corporation
444 South Flower Street, Suite 1800
Los Angeles, CA 90071
Tel:  (213) 489-0028
Fax: (213) 489-0552
Email: rdiggs@imwlaw.com
Email: akizzie@imwlaw.com
Email: yp@imwlaw.com


                                                  Attorneys for Defendant, County of San
Adam L. Miederhoff, Esq.                          Bernardino
Michelle D. Blakemore, Esq.
COUNTY COUNSEL
385 North Arrowhead Avenue, 4th Floor
San Bernardino, CA  92415-0140
Tel: (909) 387-5446
Fax: ((909) 387-4069
Email: adam.miederhoff@cc.sbcounty.gov